

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2008

# USA v. Hall

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5217

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Hall" (2008). *2008 Decisions.* Paper 1405.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1405

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 06-5217

———————————

UNITED STATES OF AMERICA

v.

TIMOTHY D. HALL,

Appellant

———————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00367-1)
District Judge: Honorable Terrence F. McVerry

———————————

Submitted Under Third Circuit LAR 34.1(a)
March 4, 2008

Before: BARRY, JORDAN, and HARDIMAN, *Circuit Judges.*

(Filed: March 20, 2008)

———————————

OPINION OF THE COURT

———————————

JORDAN, *Circuit Judge*.

Timothy D. Hall ("Hall") appeals his conviction under 18 U.S.C. § 922(g) for carrying a firearm after being convicted of a felony. We will affirm.[1]

I.   *Background*

Because we write solely for the parties, we limit our factual recitation to that which is relevant to our disposition of the appeal. On December 31, 2004, shortly after two o'clock in the morning, Detective Love and three other officers of the Pittsburgh Police Department were patrolling the area around 28th and Liberty Streets. The officers were in an unmarked police car and were all dressed in plainclothes. The officers observed a white GMC Yukon approach the intersection of 28th and Liberty Streets and stop at the traffic light. They heard loud music emanating from the Yukon and noticed that its windows were so heavily tinted that they could not see inside the vehicle. The officers decided to stop the Yukon, so, after the traffic light changed, they followed the SUV for a short distance and then activated their siren and lights. Instead of stopping, however, the Yukon increased its speed. After traveling between one-quarter and one-half mile, it swerved into the wrong lane, swerved back, and was forced to stop behind another car waiting at a red light. Detective Love then approached the driver, who turned

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review for clear error a district court's factual findings from a suppression hearing, and we exercise plenary review over legal rulings and mixed questions of law and fact. *United States v. Delfin-Colina*, 464 F.3d 392, 395-96 (3d Cir. 2006) (citing *United States v. Kiam*, 432 F.3d 524, 527 (3d Cir. 2006)). We review the District Court's calculation and application of the Sentencing Guidelines for reasonableness under an abuse-of-discretion standard. *United States v. Ali*, 508 F.3d 136, 142 (3d Cir. 2007) (citing *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)).

out to be Hall, and ordered him to exit the Yukon. After Hall exited, Detective Love noticed a bulge in Hall's waistband. Detective Love immediately conducted a pat-down search and recovered a 40 millimeter Ruger handgun, a weapon that Hall admitted he did not have a license to carry. Hall was then placed under arrest. Further investigation revealed that he was a convicted felon.

A grand jury indicted Hall on a single count of violating 18 U.S.C. § 922(g)(1), which prohibits convicted felons from carrying firearms. He initially pled not guilty and filed two motions to suppress the gun seized during his arrest. The District Court denied the motions, and Hall entered into a plea agreement, reserving the right to appeal the denials of his motions to suppress.

During the sentencing hearing, the District Court found by a preponderance of the evidence that Hall's prior felony convictions[2] rendered him an armed career criminal under 18 U.S.C. § 924(e)(1) and thus increased the applicable statutory minimum sentence from 120 months imprisonment to 180 months. The District Court sentenced Hall to 180 months imprisonment and five years supervised release. Hall then filed a timely notice of appeal.

II.    *Discussion*

On appeal, Hall contends that the police officers violated his Fourth Amendment rights by stopping his vehicle without an objectively reasonable suspicion that a traffic

---

[2] Those convictions include three drug convictions and one conviction for arson.

violation had occurred.  He also contends that 18 U.S.C. § 924(e)(1) violates the Sixth Amendment because it allows a judge, rather than a jury, to find facts which result in an increase in a mandatory minimum sentence.

The Fourth Amendment requires that all government seizures be reasonable,  U.S. Const. amend. IV, and a traffic stop is a seizure under the Fourth Amendment.  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (citations omitted).  Such stops have been "historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1 (1968)."  *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006).  Under *Terry*'s framework, a traffic stop is reasonable if it is supported by "a reasonable, articulable suspicion that criminal activity is afoot."  *Id.* (citations and internal quotation marks omitted).  "Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'"  *Id.* (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

Under this standard, the focus is not on the officers' actual motivation for stopping Hall, but is instead on whether the circumstances of the stop give rise to an objectively reasonable suspicion of illegal activity.  *Whren v. United States*, 517 U.S. 806, 813 (1996).  The government has the burden of establishing the existence of a reasonable suspicion.  *See Delfin-Colina*, 464 F.3d at 397 ("[A] police officer does have the inital burden of providing the 'specific, articulable facts' to justify a reasonable suspicion to believe that an individual has violated the traffic laws.") (citations omitted).

4

The government offers two reasons why the Pittsburgh police officers had a reasonable suspicion that Hall had committed a traffic violation. First, they reasonably suspected that the heavy window tinting on Hall's vehicle violated 75 Pa. Stat. Ann. § 4524(e)(1), which, with the exception of tinted windows installed by a vehicle's manufacturer, prohibits tinting which prevents an outsider from viewing the interior of the vehicle.[3] Second, the officers reasonably suspected that the loud music emanating from Hall's vehicle violated a Pittsburgh city ordinance which prohibits the transmission, from a vehicle, of noise which is "plainly audible" to an officer within 75 feet of the vehicle. Pittsburgh, Pa., Code § 601.04(e)(1) (2007).

Hall argues that the tint on his windows did not provide the necessary reasonable suspicion because the officers had no way of knowing at the time of the stop whether the tint was part of the original equipment or was applied after the vehicle was manufactured. He further argues that his loud music did not justify the stop because the Pittsburgh anti-noise ordinance is unconstitutionally vague. Finally, Hall argues that his attempt to elude the officers did not provide reasonable suspicion because all of the officers in the

---

[3] 75 Pa. Stat. Ann. § 4524(e) provides in pertinent part as follows:
(e)     Sun screening and other materials prohibited.--
     (1)     No person shall drive any motor vehicle with any sun screening device or other material which does not permit a person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.
     (2)     This subsection does not apply to:
          (I)     A vehicle which is equipped with tinted windows of the type and specification that were installed by the manufacturer of the vehicle ... .

unmarked car were wearing plainclothes rather than uniforms. He points to 75 Pa. Stat. Ann. § 3733(c)(1), which provides that a defense to a charge of eluding police is that the police vehicle is "unmarked, [and] not occupied by a police officer who was in uniform and displaying a badge or other sign of authority."

We conclude that each of Hall's arguments lacks merit. Regardless of whether Hall's tinted windows were installed by the manufacturer of his vehicle, the window tint provided reasonable suspicion justifying the stop. The reasonable suspicion analysis does not "deal with hard certainties, but with probabilities." *United States v. Cortez*, 449 U.S. 411, 418 (1981). Additionally, the specific facts supporting an officer's reasonable suspicion must "be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* Finally, as long as an "objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated [a] traffic-code provision," the stop is constitutional "even if the officer is mistaken about the scope of activities actually proscribed... ." *Delfin-Colina*, 464 F.3d at 399. Here, it is undisputed that Hall's tinted windows prevented anyone from viewing the interior of the Yukon, and that such tinting is, with limited exception, a violation of Pennsylvania law. Viewing these facts from the perspective of a reasonable law enforcement officer on the scene, the window tint on Hall's vehicle was sufficient to establish reasonable suspicion that Hall had violated a traffic ordinance. The officers' inability to determine at the time of the stop whether

Hall's windows were tinted by the Yukon's manufacturer does not mean that the stop was unsupported by reasonable suspicion.

Hall's attack on the Pittsburgh anti-noise ordinance cannot succeed because he did not raise it in the District Court. "It is well established that failure to raise an issue in the district court constitutes a waiver of the argument." *Brenner v. Local 514, United Bhd. of Carpenters*, 927 F.2d 1283, 1298 (3d Cir. 1991).[4] Hall's reliance on § 3733(c)(1) is also misplaced. The officers' reasonable suspicion based on the window tint arose before Hall attempted to elude them. Therefore, Hall's potential defense to an eluding charge cannot negate the reasonable suspicion which initially justified the stop.

Finally, Hall's argument that the District Court violated his Sixth Amendment rights by finding the fact of his prior convictions is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998) (holding that the Constitution does not bar a judge from finding the fact of a prior conviction). The Supreme Court has recently reaffirmed the validity of *Almendarez-Torres*. *See James v. United States*, 127 S. Ct. 1586, 1600 n.8 (2007) ("To the extent that [the defendant] contends that the simple fact of his prior conviction was required to be found by a jury, his position is baseless.").

Accordingly, we will affirm the judgment of the District Court.

---

[4] Because we decline to address the constitutionality of the anti-noise ordinance, and in light of our conclusion that Hall's tinted windows justified the initial stop, we express no opinion about whether the anti-noise ordinance justified the stop of Hall's vehicle.