

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-2006

# USA v. Delfin-Colina

Precedential or Non-Precedential: Precedential

Docket No. 05-2127

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Delfin-Colina" (2006). *2006 Decisions*. Paper 389.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/389

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-2127
_____

UNITED STATES OF AMERICA


v.

SALVADOR DELFIN-COLINA,
a/k/a Salvador Delfin-Colinas,

Salvador Delfin-Colina,

Appellant


_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Criminal No. 04-cr-00149
District Judge: The Honorable Terrence F. McVerry
_____

Argued March 28, 2006

Before: MCKEE and VAN ANTWERPEN, Circuit Judges.

1

and POLLAK,[*] <u>District</u> <u>Judge</u>.

_____

(Opinion Filed September 22, 2006)

_____

Stanley W. Greenfield    **[ARGUED]**
Greenfield & Kraut
1035 Fifth Avenue
Pittsburgh, PA 15219
    *Counsel for Appellant*

Mary Beth Buchanan
Robert L. Eberhardt    **[ARGUED]**
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
    *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

POLLAK, <u>District Judge</u>.

This matter comes before us on Salvador Delfin-Colina's appeal from a judgment of conviction for transportation of an

_____

[*]Honorable Louis H. Pollak, Senior District Judge for the United States District Court of the Eastern District of Pennsylvania, sitting by designation.

illegal alien, 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (A)(1)(B)(ii), which was entered in the District Court for the Western District of Pennsylvania on December 23, 2004, at the conclusion of a bench trial.[1] Delfin-Colina challenges the District Court's pre-trial order, entered November 10, 2004, denying his motion to suppress evidence obtained from a traffic stop conducted by Pennsylvania State Trooper Bradley Wagner. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we conclude that the District Court did not err in denying Delfin-Colina's motion to suppress, and hence we will affirm the judgment of conviction.

## I. Background

The following narrative relies on the District Court's findings of fact, which are largely based on undisputed testimony given by Pennsylvania State Trooper Bradley Wagner. At the time of the events at issue, Trooper Wagner was an eight-year veteran of the Pennsylvania State Police. During this period of service, Trooper Wagner wrote hundreds of traffic citations and warnings. Appendix ("App.") at 17. Also, as part of his patrol duties, Trooper Wagner participated in a Department of Homeland Security overtime program named "STOP," which requires officers zealously to enforce traffic laws. App. at 14.

------

[1] On April 1, 2005, the District Judge sentenced Delfin-Colina to time served. At that point Delfin-Colina had been in the Allegheny County Jail for approximately ten months.

3

On May 27, 2004, Trooper Wagner was working a "STOP" overtime shift. At 8:00 A.M., he was tasked to perform traffic control at a traffic incident that occurred on Interstate 80 near Mercer, Pennsylvania. While performing these duties, Trooper Wagner observed Delfin-Colina driving a red pickup truck. App. at 14. During the approach of the truck, Trooper Wagner "noticed what appeared to be a 'necklace' or 'pendant' hanging from the rear view mirror." App. at 14. He perceived this item to be low hanging, but "not quite touching the dashboard." App. at 15. Finally, Trooper Wagner believed that the item had the potential to obscure the driver's vision because the item was not stationary. App. at 15.[2]

Trooper Wagner testified that he believed the object hanging from the rearview mirror to be a violation of 75 Pennsylvania Consolidated Statutes § 4524(c). He further testified that it was his understanding that "anything" hanging from a rearview mirror is a violation of § 4524(c).[3] App. at 15. Section 4524(c) provides:

> Other obstruction. – No person shall drive any

_____

[2] Trooper Wagner testified, "Sure. I believe it obscures. It's a, it's an item that hangs. It's in the driver's field of vision. It's not stationary. As you would drive down the road, it would swing and it would be a distraction." App. at 70.

[3] Trooper Wagner also testified that "while you operate the vehicle nothing is to be hanging from the rear-view mirror." App. at 42. He reiterated this point several times throughout his testimony. App. at 34, 42, 43, 53, 54, 55, 68.

4

motor vehicle with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard.

Trooper Wagner's understanding of this Pennsylvania Statute was flawed. An object hanging from the inside rearview mirror does not contravene § 4524(c) unless it is positioned in such a way as to "materially obstruct, obscure or impair the driver's vision through the front windshield." *Id*.; *see also Com. v. Felty*, 662 A.2d 1102, 1105 (Pa. Super. Ct. 1995).

Based on his flawed understanding of § 4524(c), Trooper Wagner conducted a traffic stop of the pickup truck. Once Salvador Delfin-Colina's truck was stopped, Trooper Wagner obtained Delfin-Colina's identification document (a Mexican driver's license) as well as identification documents (Mexican election cards) from other occupants of the truck. Trooper Wagner then advised Delfin-Colina that he had been stopped because of the object – then discovered to be a crucifix – dangling from the rearview mirror. At this point, the front-seat passenger volunteered that he was a Puerto Rican native, but that the rest of the truck's occupants were illegal aliens. Trooper Wagner had the truck wait for approximately ninety minutes so that he could finish his traffic control duties. He then had the truck follow him to the Mercer State Police barracks – but stopping *en route* at McDonald's so that the occupants of the truck could get something to eat. Once the group arrived at the police barracks, all of the illegal aliens were taken into custody

5

and transferred to the Pittsburgh office of the Immigration and Customs Enforcement division. App. at 17. Though a "Notice of Warning" for the rearview mirror obstruction vehicle code violation was issued by Trooper Wagner approximately two hours after the initial traffic stop, Trooper Wagner testified that once he discovered that the occupants of the truck were illegal aliens, that discovery "trumped" everything else. App. at 17.

The District Court found Delfin-Colina guilty of knowingly transporting an illegal alien pursuant to 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (A)(1)(B)(ii). Delfin-Colina now argues for reversal of the District Court's denial of his motion to suppress evidence obtained as a result of Trooper Wagner's traffic stop. Delfin-Colina argued before the District Court that the traffic stop was (1) pretextual[4] and (2) was without probable cause "since the religious pendant which hung from the Defendant's rearview mirror was, in fact, no obstruction to the Defendant's visibility and safe driving." Though finding that "Trooper Wagner is mistaken in his belief that anything hanging from a rearview mirror is a violation of the Pennsylvania Vehicle Code," the District Court reasoned that "the Defendant is charged in the instant indictment with the crime of transportation of an illegal alien in violation of [8 U.S.C. §1324(a)(1)(A)(ii) and (A)(1)(B)(ii)] [so] when Trooper Wagner saw the 'necklace' or 'pendant' hanging from the rearview mirror, he had a reasonable and articulable suspicion that a violation of the Pennsylvania Vehicle Code had occurred." App. at 21.

---

[4] Delfin-Colina did not appeal the District Court's rejection of his pretext argument.

6

## II. Analysis

We review for clear error a district court's factual findings in a suppression hearing. *United States v. Kiam*, 432 F.3d 524, 527 (3d Cir. 2006) (citation omitted). We conduct a plenary review of legal rulings and mixed questions of law and fact. *Id.*

### A

At the outset, we must address the question whether reasonable suspicion or the higher standard of probable cause is required to support an investigatory traffic stop under the Fourth Amendment. The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Wilson*, 413 F.3d 382, 386 n.3 (3d Cir. 2005). Because an ordinary traffic stop is analogous to an investigative detention, it has been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *See, e.g., United States v. Elias*, 832 F.2d 24, 26 (3d Cir. 1987) (describing "*Terry*-like traffic stop[s]").

Under *Terry* and subsequent cases, "'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v.*

*Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Cortez*, 449 U.S. 411, 417 (1981). Reasonable, articulable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," *Wardlow*, 528 U.S. at 123, and only a "minimal level of objective justification" is necessary for a *Terry* stop. *Sokolow*, 490 U.S. at 7.

The *Terry* standard was for many years accepted as the standard governing run of the mill traffic stops. *See, e.g., United States v. Velasquez*, 885 F.2d 1076 (3d Cir. 1989) (upholding traffic stop based on the officer's "reasonable and articulable suspicion that [the defendant] had broken the law by speeding"). But, in 1996, dictum of the Supreme Court in *Whren v. United States*, 517 U.S. 806, 810 (1996), raised some doubt. "As a general matter," said the Court, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id*. at 810. Was the Court, shifting gears, now requiring "probable cause" as the predicate for a traffic stop? The consensus is to the contrary. As Judge William Fletcher has recently observed, the Second, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have all "construed *Whren* to require only that the police have 'reasonable suspicion' to believe that a traffic law has been broken." *United States v. Willis*, 431 F.3d 709, 723 (9th Cir. 2005) (W. Fletcher, J., dissenting); *see Holeman v. City of New London*, 425 F.3d 184, 189-90 (2d Cir. 2005); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999); *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999); *United*

*States v. Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000); *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999); *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). The Ninth Circuit, in *Lopez-Soto*, closely examined this question before concluding that reasonable suspicion is all that is required to support a belief that a traffic provision has been breached. *Lopez-Soto*, 205 F.3d at 1104-05. The *Lopez-Soto* court first noted that "[p]rior to *Whren*, it was settled law that reasonable suspicion is enough to support an investigative traffic stop." *Id*. at 1104 (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)). Second, the *Lopez-Soto* court stressed that the *Whren* passage can be read to indicate that probable cause is "sufficient to support a traffic stop, not . . . necessary." *Id*. Third, the *Lopez-Soto* court noted that the *Whren* Court did not announce that it was creating a new rule as would be expected were that the intent of the Court. Finally, the *Lopez-Soto* court highlighted the facts in *Whren*, which indicated that the arresting officer clearly possessed probable cause to believe that a traffic law had been violated. Thus, the *Lopez-Soto* court concluded that the Court's "casual use of the phrase 'probable cause' was not intended to set a new standard." *Id*.

While this court has not directly addressed the question whether *Whren* has changed the law of traffic stops,[5] we find

---

[5] It is true that quite recently, in *Gibson v. Superintendent of N.J. Dep't of Law and Public Safety-Division State Police*, 411 F.3d 427, 452 (3d. Cir. 2005), this court said "[g]enerally, the absence of reasonable suspicion renders a stop (continued...)

persuasive the Ninth Circuit's reasoning in *Lopez-Soto*. As discussed in that opinion, there is little in *Whren* to suggest that the Court meant to create a new probable cause standard in the context of investigatory traffic stops. Instead, the Court in *Whren* was responding to the situation before it – one in which the officer obviously possessed probable cause. Indeed, though the Court has never explicitly returned to the question post-*Whren*, the Court has later made mention of brief, investigatory stops of "persons or vehicles" in the context of reasonable suspicion. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). This lends support to our understanding that *Whren* was not conceived as altering the longstanding reasonable suspicion standard recognized in the traffic-stop setting. Thus, we now join our sister circuits in holding that the *Terry* reasonable suspicion standard applies to routine traffic stops.

## B

Delfin-Colina argues that, even under the permissive reasonable suspicion standard, a mistake of law by the seizing officer will render a traffic stop *per se* unreasonable under the Fourth Amendment. For the reasons stated below, we do not agree.

Though reasonable suspicion is a generally undemanding standard, a police officer does have the initial burden of providing the "specific, articulable facts" to justify a reasonable suspicion to believe that an individual has violated the traffic

---

[5](...continued)
unlawful." But the *Gibson* opinion did not discuss *Whren*, and the Supreme Court case it cited – *Alabama v. White*, 496 U.S. 325, 329-30 (1990) – antedates *Whren*.

10

laws. *See Cortez*, 449 U.S. at 416 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975)). And a reviewing court must consider whether the "rational interferences from those facts reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. Ultimately, our mandate is to weigh "the totality of the circumstances – the whole picture." *Sokolow*, 490 U.S. at 8 (quoting *Cortez*, 449 U.S. at 417).

The *Whren* Court explained that a court should undertake an objective review of the officer's rationale for the investigatory traffic stop. 517 U.S. at 806. That is, a court should only look to whether specific, articulable facts produced by the officer would support reasonable suspicion of a traffic infraction. In *Whren*, two police officers observed a truck in a "high drug area" that had stopped at a stop sign for an excessive amount of time. The truck then turned without signaling and sped off. *Id*. at 808. The officers gave chase, and – once they caught up with and stopped the vehicle – one officer observed a passenger holding two bags of what appeared to be crack cocaine. Whren argued that the stop had not been justified by probable cause to believe that the occupants were engaged in illegal drug activity, and that the officers' asserted ground for approaching the vehicle – namely, to give the driver a warning about traffic violations – was pretextual. *Id*. at 809.

The Court held that a stop was reasonable under the Fourth Amendment where officers had probable cause to believe that the petitioner had violated the traffic code, even if the ultimate charge was not related to the traffic stop. *Id*. at 808-09. The Court explained that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," and that

11

"we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." *Id*. at 813; *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) ("Improper motive, however, is irrelevant to the question whether the objective facts available to the officers at the time reasonably could have led the officers to conclude that Smith was committing an offense." (citing *Whren*, 517 U.S. at 813)).

Taken together, then, *Terry* and *Whren* stand for the proposition that a traffic stop will be deemed a reasonable "seizure" when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. In other words, an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place. Consequently, a reasonable mistake of fact "does not violate the Fourth Amendment." *Chantasouxat*, 342 F.3d at 1276; *see also Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) (noting that factual determinations made by government agents need not "always be correct," but they always have to be "reasonable"); *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005).

Under this framework, though mistakes of fact are rarely fatal to an officer's reasonable, articulable belief that an individual was violating a traffic ordinance at the time of a stop,

12

many of our sister circuits have held that mistakes of law – even reasonable ones – can render a traffic stop "unreasonable" under the Fourth Amendment.  For example, in *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998), the Fifth Circuit cited *Whren* for the proposition that law enforcement officers have "broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions," but that, correspondingly, "the legal justification must be objectively grounded."  *Id*.  Consequently, the court held that a traffic stop was unreasonable because the alleged traffic infraction – having a turn signal on without turning – was not a violation of Texas law.  *Id*.; *see also Tibbetts*, 396 F.3d at 1138 (agreeing with *Miller*, the Tenth Circuit ruled, that "failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable); *United States v. Lopez-Valdez*, 178 F.3d 282, 288-89 (5th Cir. 1999) (holding unconstitutional a traffic stop when the trooper pulled over a car on the mistaken belief that driving with a broken taillight violated state law).

The Ninth Circuit, in *Lopez-Soto*, also agreed with the *Miller* court's rationale.  In *Lopez-Soto*, the officer stopped the defendant because the officer had police academy instruction that the absence of a vehicle registration sticker visible from the rear provided a reasonable basis for suspicion of a Baja California traffic code violation.  205 F.3d at 1105.  However, the applicable statute, in fact, directed that the sticker be displayed on the windshield, which is where Lopez-Soto had his sticker.  *Id*. at 1106.  Because Lopez-Soto's action "was not a violation of Baja California law," the court concluded that "the stop before us in this case was not objectively grounded in the governing law" and was therefore unconstitutional.  *Id*.

13

The Tenth Circuit, in *Chantasouxat*, joined the *Lopez-Soto* and *Miller* courts. 342 F.3d at 1277-79. In that case, an officer performed a traffic stop because he incorrectly believed that a truck without a rearview mirror in the car was in violation of Alabama and Birmingham vehicle codes. *Id.* at 1277. The officer who performed the stop had written over a hundred tickets for this particular violation, had been told by a magistrate that the lack of a rearview mirror in a car was a violation, and had also been trained that this was the law. *Id.* at 1279. The court noted that, unlike in *Lopez-Soto*, *Lopez-Valdez*, or *Miller*, the officer's mistake of law was reasonable. *Id.* Nonetheless, the court concluded that the reasonableness of the mistake of law is the "wrong question." *Id.* Rather, "the correct question is whether a mistake of law, no matter how reasonable or understandable, can provide objectively reasonable grounds for reasonable suspicion or probable cause." *Id.* The Tenth Circuit held that "a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop." *Id.*

In each of the above cases, the specific, articulable facts revealed that the alleged infractions upon which the vehicles were stopped were not based in law. In other words, the objective review of the record required by *Whren* showed that the stopped individuals in each of these cases had not violated any applicable statute or ordinance.

What these cases do not, however, say is that a mistake of law by a police officer renders a traffic stop *per se* unreasonable. Instead, a mistake of law is only unreasonable when the officer does not offer facts that objectively show that the identified law was actually broken. In situations where an

14

objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated the traffic-code provision cited by the officer, the stop is constitutional even if the officer is mistaken about the scope of activities actually proscribed by the cited traffic-code provision. Therefore an officer's Fourth Amendment burden of production is to (1) identify the ordinance or statute that he believed had been violated, and (2) provide specific, articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction. As long as both prongs are met, an officer's subjective understanding of the law at issue would not be relevant to the court's determination.

C

With these principles in mind, we hold that Trooper Wagner possessed reasonable suspicion to conduct the traffic stop of Delfin-Colina. Trooper Wagner testified that he was doing traffic control when he noticed what appeared to be a necklace or pendant hanging from the rearview mirror. The hanging item was long enough to almost touch the dashboard, and Trooper Wagner believed the item was not stationary and was thus obscuring the driver's vision. This information led Trooper Wagner to conclude that the truck driver was violating § 4524(c), which provides that a motor vehicle may not be driven "with any object or material hung from the inside rearview mirror or otherwise hung, placed or attached in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard." Based on this understanding,

15

Trooper Wagner stopped the truck.

Viewed objectively, Trooper Wagner has met his burden to provide specific, articulable facts showing that an officer would reasonably believe Delfin-Colina was in violation of § 4524(c). Section 4524(c) prohibits, *inter alia*, hanging items from the rearview mirror if they "materially obstruct, obscure, or impair the driver's vision through the front windshield," and Trooper Wagner testified that he believed at the time that Delfin-Colina's vision was obstructed by the crucifix. More importantly, an officer might have reasonably concluded that such a low-hanging item would either obstruct or otherwise impair the driver's vision because of its potential to swing back and forth, which was the specific concern cited by Trooper Wagner. Indeed, because of this significant potential for swinging to and fro, anything that hangs such that it is almost touching the dashboard would, arguably, be a *per se* violation of § 4524(c). In any event, the legal justification is "objectively grounded" and Trooper Wagner has met his burden of producing specific, articulable facts showing that he possessed reasonable suspicion of a violation under § 4524(c). *Cf. Com. v. Felty*, 662 A.2d 1102 (Pa. Super. Ct. 1995) (holding that an officer lacked reasonable and articulable grounds to warrant a traffic stop pursuant to § 4524(c) because the officer could not accurately describe the object and, "most significantly," the officer "never testified that . . . the object materially obstructed, obscured, or impaired the driver's vision, or constituted a safety hazard"); *United States v. Johnson*, 63 F.3d 242 (3d Cir. 1995) (determining, pre-*Whren*, that officer's testimony that he conducted a traffic stop pursuant to § 4524(c) when he saw several large air fresheners hanging from rearview mirror was

16

more than sufficient to provide the officer with "articulable and reasonable suspicion" of a § 4524(c) violation).

The only question then is whether Trooper Wagner's testimony that it was his understanding that *anything* hanging from a rearview mirror constituted a violation of the Pennsylvania Vehicle Code rendered the traffic stop unreasonable. As the law only prohibits items attached to rearview mirrors "in such a position as to materially obstruct, obscure or impair the driver's vision through the front windshield or any manner as to constitute a safety hazard," Trooper Wagner made a significant mistake of law. For the reasons given above, however, this mistake of law is distinguishable from the ones made by the officers in *Miller*, *Lopez-Soto*, *Lopez-Valdez*, and *Chantasouxat* because an objective review of the facts shows that an officer who correctly interpreted § 4524(c) and was in Trooper Wagner's position would have possessed reasonable suspicion to believe that Delfin-Colina was in violation of § 4524(c). Because it is this objective analysis that is controlling under *Whren*, Trooper Wagner's mistake of law did not render the traffic stop unconstitutional. Holding otherwise would require this court to engage in the type of subjective analysis that the *Whren* Court singled out as irrelevant in the Fourth Amendment context.

## III. Conclusion

For the foregoing reasons, we agree with the District Court's order of November 10, 2004, denying Delfin-Colina's motion to suppress evidence obtained from Trooper Wagner's traffic stop. Accordingly, we will affirm the judgment of

17

conviction.