**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1767
_____

UNITED STATES OF AMERICA

v.

TYRONE JOHNS,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-08-cr-00372-001)
District Judge:  Honorable Jan E. DuBois
_____

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2011
_____

Before:  SCIRICA, BARRY and VANASKIE, Circuit Judges

(Opinion Filed: February 1, 2011)
_____

OPINION OF THE COURT
_____

VANASKIE, Circuit Judge.

Tyrone Johns pleaded guilty to possession with intent to distribute five or more

grams of crack cocaine.  Johns preserved his right to appeal the District Court's denial of

his motion to suppress evidence obtained during a traffic stop. For the reasons that follow, we will affirm the Judgment of the District Court.

I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we relate only those facts necessary to our analysis.

Johns was driving a rented car when he stopped at a traffic light at the intersection of 60th Street and Cedar Avenue in Philadelphia on the evening of November 25, 2007. Police Officers Kaliv Ivy and Joseph Carter, riding together in a patrol vehicle, pulled behind Johns's car and observed that his centrally mounted rear brake light was not working. The officers activated their overhead lights and initiated a traffic stop. Officer Ivy approached Johns's vehicle, using his flashlight to look inside the car. He noticed "a sandwich bag containing green tinted packets also containing an off-white chunky substance" in Johns's pocket. (A. 63a.) It was later discovered that these packets contained crack cocaine.

Officer Ivy ordered Johns out of the vehicle and learned that Johns was not carrying a driver's license. The officers then called the Philadelphia Parking Authority to have Johns's vehicle towed. Johns was detained in the patrol vehicle while the officers waited for the tow truck to arrive. Johns's vehicle remained running for some time before Officer Carter removed the keys from the ignition.

Officer Carter gave Johns a traffic citation for driving without a license. The citation also stated, "veh[icle] high mount brake light out." (A. 127a.) Officer Ivy prepared a property receipt, which stated that Johns was driving a vehicle "with its high

2

mount brake light out." (A. 125a.) Officer Ivy's investigation report also stated that "rear brake lights" was the reason for the traffic stop. (A. 126a.)

Johns was indicted on drug charges. He subsequently sought to suppress the crack cocaine on the grounds that the traffic stop was illegal. At the suppression hearing, Johns challenged the government's position that his vehicle's center brake light was not operational when the police stopped his car. He testified that five days before he was pulled over, a rental agent conducted a "walk-around" inspection of the vehicle. Johns testified that all of the car's brake lights were working at that time. Johns further testified that on the night of his arrest, while he was detained in the patrol vehicle, he observed his rental car while it was still running and noticed that the center light was illuminated.

Johns also elicited Officer Ivy's testimony that he understood a "high mount brake light" to mean a light in a car's rear view window, not at the center of the trunk. Officer Ivy's property receipt referenced an inoperative "high mount brake light" on Johns's rental car. But the center brake light on Johns's rental car, a 2007 Ford Mustang, is at the center of the trunk, not in the rear window. Johns argued that this discrepancy undermined Officer Ivy's testimony that the center brake light was not functioning.

Johns also subpoenaed Hertz to obtain the vehicle's maintenance and repair records for November and December of 2007. Hertz supplied records showing that the car had its oil changed on November 8, 2007, a little more than two weeks prior to the traffic stop. The records did not contain any reference to work on the vehicle's brake lights.

3

In addition to disputing the factual basis of his stop, Johns also maintained that driving with an inoperative center brake light does not violate the Pennsylvania Motor Vehicle Code. Accordingly, Johns maintained that the police did not have a legal justification for the traffic stop, even if his center brake light was not working properly.

The District Court denied Johns's motion to suppress. First, the Court concluded that Pennsylvania law does not require vehicles to have a centrally mounted brake light, but it does require that a center brake light, if installed on a vehicle, function properly. *United States v. Johns*, No. 08-372-01, 2009 WL 2634119, at *4 (E.D. Pa. Aug. 27, 2009). Second, the Court credited Officer Ivy's testimony and concluded that he reasonably believed that the center brake light was not working. *Id.* at *5. Accordingly, the Court determined that the stop was lawful.

After the District Court denied Johns's suppression motion, Johns subpoenaed Hertz again, seeking all the vehicle's maintenance records. Hertz supplied documents showing that the car received maintenance on several occasions between October 30, 2008, and April 14, 2009. None of the work was to repair the brake lights. The April 14, 2009 record showed that all lights were checked, and none were replaced. In light of this new evidence, Johns filed a motion for reconsideration of the District Court's denial of his suppression motion. The District Court denied the motion, reasoning that the new evidence was not probative of whether the center brake light was working when Johns was pulled over on November 25, 2007.

Johns subsequently pleaded guilty to a charge of possession with intent to distribute five or more grams of crack cocaine. Johns generally waived his right to

appeal, but his plea agreement provided that he could appeal the District Court's denial of his motion to suppress. The District Court sentenced Johns to 120 months' imprisonment. Johns now appeals.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

## A.

Johns argues that the District Court erroneously denied his motion to suppress because the Pennsylvania Motor Vehicle Code does not require a center brake light to function properly. If we adopt Johns's interpretation of Pennsylvania law, then we must conclude that his traffic stop was unlawful. The Fourth Amendment allows a police officer to initiate a brief investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), if he "has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). A traffic stop is lawful "when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). If an officer initiates a stop based on a mistaken understanding of the law, the stop is unreasonable if "the officer does not offer facts that objectively show that the identified law was actually broken." *Id.* at 399. Accordingly, if

5

Officer Ivy and Officer Carter mistakenly believed that Pennsylvania law required the center brake light on Johns's car to be operational, the traffic stop would be unconstitutional, for the United States could not show that Johns had violated the law.

The Pennsylvania Motor Vehicle Code imposes the following requirements on a car's rear lighting:

> Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department. If a vehicle is equipped with a centrally mounted rear stop light, a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or overlay meets all applicable State and Federal regulations.

75 Pa. Cons. Stat. § 4303(b). Moreover, Pennsylvania regulations require that passenger cars "have at least one red stop lamp on each side of rear of vehicle, which shall be illuminated immediately upon application of the service brake." 67 Pa. Code § 175.66(e); s*ee also* 67 Pa. Code § 153.4(a)(1) & 67 Pa. Code § 153 app. A, Table III (requiring that passenger cars have "at least" two red stop lamps). Plainly, neither the statute nor the regulations require that vehicles have a "centrally mounted rear stop light" such as the one on Johns's rental car. If a car does have a center brake light, however, it is less clear whether Pennsylvania law requires that the light function properly.

Johns argues that Pennsylvania law mandates that only "required" lights function properly. Johns correctly notes that one section of the Pennsylvania Code provides that "[e]very *required* lamp or switch shall be in safe operating condition." 67 Pa. Code § 175.66(a) (emphasis added). Other regulations, however, simply require that brake

6

lights function properly, regardless of whether the light is one of the two required by law. One regulation provides that "[e]ach [stop] lamp on a passenger car . . . shall have an effective projected luminous area not less than 3 1/2 square inches. If . . . multiple lamps are used, the effective projected luminous area of each . . . lamp shall be not less than 3 1/2 square inches . . . ." *Id.* § 153.4(a)(1)(vi). Another regulation mandates that "[t]he stop lamps on each vehicle shall be activated upon application of the service brakes." *Id.* § 153.4(e)(4). Similarly, another regulation provides that all lamps other than "[t]urn signal lamps, hazard warning signal lamps and school bus warning lamps" "shall be steady-burning." *Id.* § 153.4(f)(1)-(2). Additionally, brake lights "shall be visible at [a] distance of 100 feet during normal sunlight," *id.* § 175.66(f)(1), and all lights "shall be properly fastened; direct light properly; . . . and not be so obstructed by a screen, bar, auxiliary equipment or a device as to obscure, change the color of or obstruct beam." *Id.* § 175.66(g).

We conclude that these regulations, taken together, require that a centrally mounted brake light function properly. The Pennsylvania Motor Vehicle Code, in turn, requires that stop lamps be "in conformance with regulations of the department." 75 Pa. Cons. Stat. § 4303(b). Therefore, when an officer sees that a vehicle's center brake light is not operating, he may reasonably suspect that the operator is violating Pennsylvania traffic law.

Significantly, the Superior Court of Pennsylvania recently reviewed these same regulations and reached the same conclusion in a factual scenario materially indistinguishable from that presented here. *Commonwealth v. Muhammed*, 992 A.2d 897,

902-03 (Pa. Super. Ct. 2010). Specifically, the state intermediate appellate court ruled that a law enforcement officer may validly effect a traffic stop where, as here, the officer observes that a center-mounted brake light is not operational, explaining that the Pennsylvania Motor Vehicle Code mandates that a center-mounted brake light that is original equipment "operate properly and safely." *Id.* at 902. Stated otherwise, a malfunctioning center-mounted brake light constitutes a Motor Vehicle Code violation enforceable by police officers. This persuasive ruling of the Pennsylvania Superior Court serves to validate the police officers' decision in this case to effect a traffic stop. Accordingly, if the center brake light on Johns's rental car was not functioning on the evening of November 25, 2007, the traffic stop was lawful.

B.

Johns argues that "[t]he District Court did not adequately resolve" whether Johns's center brake light was operational the night the police stopped his vehicle. (Appellant's Br. at 13.) Officer Ivy, however, testified that he saw that the center brake light was not working. The District Court weighed Officer Ivy's testimony against Johns's evidence suggesting that the light was functional, and found Officer Ivy's testimony credible. "It is not for us to weigh the evidence or to determine the credibility of witnesses." *United States v. Petersen*, 622 F.3d 196, 201 (3d Cir. 2010) (internal quotation marks omitted). We review the District Court's factual findings for clear error, and "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). As there is evidence that supports the District Court's factual findings, we cannot say that the

8

District Court clearly erred in concluding that Officer Ivy reasonably believed that the centrally mounted brake light on Johns's rental car was not working.

III.

For the foregoing reasons, we will affirm the Judgment of the District Court.