NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1271
_____

UNITED STATES OF AMERICA

v.

LIN RASHIED JONES,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(Crim. No. 2-10-cr-00125-001)
District Judge: Honorable Donetta W. Ambrose
_____

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2012
_____

Before: HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed: December 4, 2012)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.


     In November 2009, Appellant Lin Rashied Jones was a passenger in a white

Acura, when plainclothes officers stopped the car because of its broken center brake

light.  Recognizing Appellant as a former arrestee and recent shooting victim, one officer drew his gun and ordered Appellant from the car when Appellant began moving as if he was hiding a weapon under his car seat.  A machine pistol was subsequently found on the floor of the passenger compartment.

Appellant alleges that the stop and frisk of him and others in the Acura violated his Fourth Amendment rights because the officers did not have reasonable suspicion to stop the Acura and they used excessive force in executing the stop.[1]  We disagree.  We shall affirm the District Court's suppression ruling.

## I. BACKGROUND

Since we write primarily for the benefit of the parties, we recount only the essential facts.

On November 29, 2009, four plainclothes police officers — Brian Schmitt, Brian Martin, Brian Burgunder, and Ronald Freeman — were patrolling the Hill District of Pittsburgh in an unmarked police car.  Around midnight, the foursome stopped a white Acura owned and driven by James Little for having a broken center brake light.  The

---

[1] Appellant also raises two challenges for the sake of preservation, which we will not address at length since Appellant has admitted that they are foreclosed by Supreme Court precedent.  The preserved issues are the facial and as-applied unconstitutionality of 18 U.S.C. § 922(g)(1) and Appellant's sentencing under the Armed Career Criminal Act.  With respect to this second challenge, we note that the indictment does list Appellant's previous convictions.  Lastly, Appellant challenges the District Court's refusal to instruct the jury on the mandatory minimum sentence of § 922(g)(1).  This challenge is also foreclosed by precedent.  As Appellant concedes, it has long been held by the Supreme Court that sentencing is exclusive to the trial judge and may not be considered by juries.  *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).

officers gave Little a verbal warning and told him to park the Acura until he could fix the brake light.

Later on in the night, around 2 a.m., the officers spotted the same white Acura at the intersection of Wylie Avenue and Chauncey Street. Appellant was standing next to the Acura and appeared to be adjusting an object in his waistband. Officer Schmitt recognized Appellant and remembered that he had an arrest record and was recently shot in the Hill District. Based on these facts, as well as Appellant's furtive movements, Officer Schmitt was concerned that Appellant was armed. The officers attempted to approach Appellant but, due to traffic, the officers circled the intersection, only to find that Appellant and the white Acura had departed.

The officers continued their patrol and soon saw the white Acura again, this time parked at a Sunoco APlus gas station. There was one occupant in the car's passenger seat, which Officer Schmitt was unable to confirm as Appellant. Little then walked out of the gas station convenience store, entered the driver's side and started to drive off.

Before Appellant and Little could exit the parking lot, the officers turned on their sirens and pulled the Acura over for the traffic violation of having a broken center brake light. Officer Schmitt got out of the police car and approached the Acura. Appellant, along with the front passenger side of the vehicle, was illuminated by both the gas station lights and the headlights of the police car. Officer Schmitt saw Appellant make sudden, furtive movements between his legs, which, according to Officer Schmitt, included Appellant lifting his body off of the seat and reaching towards the floor of the car with his right hand.

3

Based on his prior training, experience, and knowledge of Appellant's past arrests, Officer Schmitt believed that he was attempting to hide a weapon and pulled his own gun. As Officer Schmitt continued his advance, he shined his flashlight into the passenger side compartment and saw that, indeed, the passenger was Appellant and that he was concealing a weapon below his knees. Officer Schmitt then called for two of his fellow officers to assist him in removing Appellant from the vehicle and arresting him. The officers retrieved a semi-automatic, FMJ machine pistol from the floor of the passenger side of the Acura.

On June 16, 2010, Appellant was indicted for one count of possession of a firearm by a felon under 18 U.S.C. § 922(g)(1). On January 11, 2011, Appellant moved to suppress the machine pistol found in the Acura. On June 22, 2011, the District Court denied the motion to suppress. On July 20, 2011, Appellant was convicted by a jury on the one count and subsequently sentenced to 180 months' imprisonment. Appellant then filed this timely appeal.

## II. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. In reviewing a district court's ruling on the suppression of evidence, our review of questions of law is plenary, while we review findings of fact for clear error. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010).

4

# III. ANALYSIS

The Fourth Amendment of the Constitution of the United States protects citizens against unreasonable searches and seizures. Although a traffic stop is a "seizure" within the meaning of the Fourth Amendment, it has historically been reviewed under the reasonable suspicion framework first articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006).

## A. Reasonable Suspicion

In the course of traffic stops, this requirement is met if officers have a reasonable suspicion that the stoppee has violated a traffic law. *See Prouse*, 440 U.S. at 663; *Delfin-Colina*, 464 F.3d at 396-97. Less demanding than probable cause, reasonable suspicion requires that an officer have an articulable basis for believing that the stoppee has engaged in criminal activity. *Delfin-Colina*, 464 F.3d at 396. Accordingly, a traffic stop is lawful "when an objective review of the facts shows that an officer possessed specific, articulable facts than an individual was violating a traffic law at the time of the stop." *Delfin-Colina*, 464 F.3d at 398; *see also Prouse*, 440 U.S. at 663. In the course of traffic stops, this requirement is met if officers have a reasonable belief that the stoppee has violated a traffic law. *See Prouse*, 440 U.S. at 663; *Delfin-Colina*, 464 F.3d at 396. In forming a reasonable suspicion, officers may rely on their own experience and knowledge. *Terry*, 392 U.S. at 27; *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).

Here, the white Acura's broken center brake light was in violation of Pennsylvania's traffic laws and gave the officers reasonable suspicion to make the stop. Pennsylvania's motor vehicle code states that "[e]very vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department." 75 Pa. Cons. Stat. § 4303(b). This statute subjected the Acura's lights to 67 Pa. Code § 175.80(a)(9)(i), which states that a vehicle is not up to code if "[a]n exterior bulb or sealed beam, if originally equipped or installed, fails to light properly." *See Pennsylvania v. Muhammed*, 992 A.2d 897, 902 (Pa. Super. Ct. 2010) ("A center-mounted brake light is not required equipment under the [motor vehicle code] and regulations but, if it is originally equipped or installed, then it must operate properly and safely.") (citing 67 Pa. Code § 175.80). Under this regulatory framework, Little's broken center brake light gave the officers sufficiently particular reasons to believe that the Acura was non-compliant with § 175.80(a)(9)(i) of Pennsylvania's motor vehicle regulations.

Appellant argues that Officer Schmitt made a mistake of law in believing that the motor vehicle code required that the Acura's center brake light be functional and that, therefore, his suspicion of a traffic violation was unreasonable. Instead of 67 Pa. Code § 175.80, Appellant asserts that the applicable Pennsylvania motor vehicle regulation is 67 Pa. Code § 175.66(e), which requires that vehicles have left and right rear brake lights but says nothing of center brake lights.

Since this is a matter of state law, we must follow Pennsylvania state law on the matter. In *Pennsylvania v. Muhammed*, the Pennsylvania Superior Court found that the state motor vehicle laws required that center rear brake lights be operational under § 175.80. 992 A.2d at 902. Further, § 4303(b) requires that the "rear lighting system," as a whole, conform to the motor vehicle codes and regulations — what constitutes the entirety of the system can encompass any number of configurations and placements of lights, "including rear lamps, rear reflectors, stop lamps and license plate light." 75 Pa. Cons. Stat. § 4303(b). Appellant's argument also fails because its application would make it superfluous for the statute to speak broadly about the entire lighting system conforming to the motor vehicle code only to limit conformity to certain components of that system.

Accordingly, under 75 Pa. Cons. Stat. § 4303(b), via 67 Pa. Code § 175.80(a)(9)(i), Officer Schmitt had a reasonable suspicion that the broken center brake light violated the motor vehicle code and lawfully stopped the Acura.

**B. Officer Schmitt's Search of the Vehicle**

In the course of a lawful traffic stop, an officer may pat down the occupants of the vehicle and conduct a search of the passenger compartment, if he has a reasonable suspicion that the occupants might be armed and dangerous. *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) and *Pennsylvania v. Mimms*, 434 U.S. 106, 111-12 (1977)). In addition, an officer may briefly surveil the interior of a car. *See Bonner*, 363 F.3d at 216. Any weapons

found in plain view during a traffic stop may be seized.  *See Minnesota v. Dickerson*, 508 U.S. 366, 374-75 (1993); *Colorado v. Bannister*, 449 U.S. 1, 3-4 (1980).

Officer Schmitt's search of the car was non-invasive because it only included shining a light into the vehicle and approaching the passenger side of the Acura.  As Officer Schmitt proceeded towards Appellant, the passenger side of the Acura was illuminated by Officer Schmitt's flashlight, the gas station lights, and the headlights of the police vehicle, which exposed the machine pistol between Appellant's legs without Schmitt having to open the car door and remove Appellant.  Due to this lighting, a more invasive search of the car was not even necessary to reveal the machine pistol between Appellant's legs.  Thus, Officer Schmitt lawfully recovered the machine pistol under the plain view doctrine.

Appellant argues that Officer Schmitt used excessive force in his stop of the Acura by drawing his gun because he could have restrained Appellant and secured the machine pistol without such extreme force.  The force and tactics used by an officer during a stop cannot exceed the amount necessary to ensure the safety of the officer and the surrounding public and may not turn the stop into an arrest.  *See Bonner*, 363 F.3d at 216-17; *see also Terry*, 392 U.S. at 24, 29; *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995).  Nonetheless, officers may apply enough force during a stop to neutralize the situation of potential danger, depending on the peculiarities of the stop, including whether the stoppee poses an immediate threat of harm.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

While the initial stop for the broken center brake light would not have warranted display of his gun, the situation changed once Officer Schmitt recalled Appellant's criminal history and observed Appellant making furtive movements as if he was hiding a weapon. From Officer Schmitt's vantage, Appellant potentially had a gun well within reach to pick up and fire at Officer Schmitt, his fellow officers, or innocent bystanders. Coupled with Officer Schmitt's knowledge of Appellant's prior arrest record and recent involvement in a shooting, it was reasonable for Officer Schmitt to fear that Appellant would fire any nearby weapon and, in response, Officer Schmitt's use of his gun was commensurate with the threat posed by Appellant.

## IV. CONCLUSION

For the foregoing reasons, we affirm the District Court's denial of Appellant's motion to suppress. Officer Schmitt's actions were executed within the confines of the Fourth Amendment because he had reasonable suspicion that the Acura was in violation of the motor vehicle code, the machine pistol was visible in his plain view as he approached the vehicle, and his exercise of force during the stop was proportionate to the threat presented.