**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3780
_____

KIMBERLEE RAE CARBONE,
Appellant

v.

CHIEF ROBERT SALEM; OFFICER DAVID MAIELLA;
OFFICER TERRY DOLQUIST; OFFICER SHIELA PANELLA;
CORRECTION OFFICER APRIL BRIGHTSHUE;
CORRECTION OFFICER NIESHA SAVAGE;
COMMANDER MARK KEYSER; ATTORNEY JOSHUA LAMANCUSA;
JAMESON HEALTH SYSTEM; BERNARD GEISER, M.D.;
KIM FEE; THE CITY OF NEW CASTLE; THE COUNTY OF LAWRENCE

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-15-cv-01175)
Presiding Magistrate Judge:  Hon. Maureen P. Kelly
_____

Submitted Pursuant to Third Circuit LAR 34.1(a):
May 2, 2019
_____

Before:  RESTREPO, PORTER, and FISHER, *Circuit Judges*.

(Filed: October 22, 2019)

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*.

Kimberlee Rae Carbone appeals the District Court's grant of summary judgment in favor of Defendants, various police officers of the New Castle Police Department and other corrections and medical personnel involved with her detention. We hold that Carbone's arrest and the ensuing searches of her person were permissible, and we therefore will affirm.

On November 3, 2013, at approximately 6:00 p.m., Officer David Maiella stopped Carbone's vehicle after Carbone completed a left turn off of Ray Street in New Castle, Pennsylvania. Officer Maiella initiated a stop of Carbone's vehicle because he believed that the car improperly signaled the turn. Upon approaching the vehicle, Officer Maiella detected the odor of marijuana, and, after arriving at the scene, a canine unit provided a "positive indication for the presence of narcotics." App. 397a:3–11. Carbone then advised Officer Maiella that she had smoked marijuana before operating her vehicle, at which point he arrested her for driving under the influence, in violation of 75 Pa. Cons. Stat. § 3802(d)(1)(i).

While still at the scene of the arrest, Officer Maiella and Officer Terry Dolquist observed Carbone reaching into her shorts and fidgeting in the back seat of the police

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

cruiser, at which point the officers began to suspect that Carbone was attempting to hide something on her person. The officers then decided to transport her to the Lawrence County Jail so that a female correction officer could perform a strip search. During the course of the strip search, Corrections Officers April Brightshue and Niesha Savage both observed a baggie partially hidden in Carbone's vagina. Officer Brightshue also noted that Carbone had something in her mouth, which Officers Maiella and Dolquist believed to be narcotics. Due to the concern that Carbone may have ingested narcotics either through the item concealed in her mouth, or the baggie of narcotics in her vagina, or both. Officers Maiella and Dolquist determined that the situation presented a medical emergency and brought Carbone to Jameson Hospital. At the hospital, Dr. Bernard Geiser, M.D., performed a medical examination of Carbone and a cavity search.

Carbone brought suit under 42 U.S.C. § 1983, alleging, among other things, that her Fourth Amendment right to be free from unreasonable searches and seizures had been violated. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. This Court exercises plenary review over a district court's grant of summary judgment. *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Viewing the facts in the light most favorable to Carbone, we hold that the various police officers, corrections officials, and medical personnel did not exceed the bounds of the Fourth Amendment in arresting Carbone and conducting the searches of her person.

3

First, Officer Maiella had sufficient reasonable suspicion to initiate a stop of Carbone's vehicle because Officer Maiella can articulate specific facts as to why he believed that Carbone executed a turn without applying her turn signal in a timely fashion. *See United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006) (holding that "an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place"); *see also United States v. Mosley*, 454 F.3d 249, 255 n.9 (3d Cir. 2006) ("A traffic stop requires only reasonable suspicion to believe that a traffic violation has been committed."). Second, Officer Maiella had probable cause to arrest Carbone following the traffic stop because he smelled marijuana emanating from Carbone's vehicle, a canine unit also detected the presence of marijuana, and Carbone admitted to Officer Maiella that she had smoked marijuana prior to operating her vehicle. Thus, Officer Maiella had probable cause to arrest Carbone because there was a "fair probability" that Carbone had violated 75 Pa. Cons. Stat. § 3802(d)(1)(i) by driving under the influence of marijuana. *See Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) ("Far from demanding proof of guilt beyond a reasonable doubt, '[p]robable cause exists if there is a fair probability that the person committed the crime at issue.'" (alteration in original) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000))); *see also Commonwealth v. Jones*, 121 A.3d 524, 529 (Pa. Super. Ct. 2015) (holding that "[b]ecause marijuana is a Schedule I controlled substance, the Vehicle Code prohibits an individual from operating a vehicle after consuming *any* amount of marijuana," so long as marijuana can be detected in the driver's system).

Third, Officer Maiella and Officer Dolquist's decision to transport Carbone to the Lawrence County Jail for female corrections officers to conduct a strip search was reasonable under the circumstances because Carbone's conduct during her arrest, such as reaching into her shorts and fidgeting while in the police cruiser, indicated that she may have been concealing contraband. *See Bell v. Wolfish,* 441 U.S. 520, 558–59 (1979) (holding that the reasonableness of a search is determined under the circumstances); *see also Florence v. Bd. of Chosen Freeholders*, 621 F.3d 296, 299 (3d Cir. 2010) (noting that a majority of "circuit courts of appeals applied [the] balancing test [found in *Bell v. Wolfish*, 441 U.S. 520,] and uniformly concluded that an arrestee charged with minor offenses may not be strip searched consistent with the Fourth Amendment unless the prison has reasonable suspicion that the arrestee is concealing a weapon or other contraband").

Fourth, because it was possible that Carbone had accidentally ingested the narcotics that officers believed were contained in the concealed item in her mouth and/or the baggie in her vagina, Carbone's body cavity search was permissible without a warrant because the situation presented a time-sensitive, medical emergency. *See Schmerber v. California*, 384 U.S. 757, 770 (1966) (holding that intrusions of the human body without a warrant can be reasonable in cases of emergency); *see also United States v. Owens*, 475 F.2d 759, 760 (5th Cir. 1973) (per curiam) (holding that a warrantless medical procedure, when authorized by officers acting in good faith "to prevent further harm," did not violate a detainee's rights). Further, because the warrantless cavity search was permissible under the exigent circumstances that presented themselves, Carbone's consent to the body cavity search was not necessary.

Therefore, for the reasons stated above, we affirm the District Court's grant of summary judgment in favor of Defendants.