NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 19-3402

———————

UNITED STATES OF AMERICA

v.

KASTLER CHERISME,

Appellant

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 2:17-cr-00431-001)
District Judge: Honorable Stanley R. Chesler

———————

Submitted under Third Circuit LAR 34.1(a)
on November 20, 2020

Before: AMBRO, BIBAS and ROTH, <u>Circuit Judges</u>

(Opinion filed: May 6, 2021)

———————

OPINION[*]

———————

ROTH, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

A jury convicted Kastler Cherisme of being a felon in possession of a firearm and possession with intent to distribute controlled substances. He challenges the District Court's denial of his motion to suppress and the sufficiency of the evidence against him. He also raises a *Brady v. Maryland* claim. We will affirm the judgment of the District Court.

I.

On June 24, 2017, a person told Newark Police Department (NPD) officers that the male driver of a black Crown Victoria in the area had drugs and a gun. The person also told the officers the car's license plate number. Moments later, the officers saw a car matching the description with the reported license plate number. The vehicle had darkly tinted windows. The officers pulled the car over. One of the officers, Officer Brea, testified at trial that they "pulled the vehicle over for tinted windows to conduct a motor vehicle stop."[1] The other officer, Officer Brock, also testified that they pulled the car over because of the window tint. Officer Brea's incident report states that the vehicle's windows were "darkly tinted."[2]

Officers Brea and Brock approached the vehicle. The driver, Cherisme, rolled down the windows, and officers detected a strong odor of raw marijuana emanating from the car. Officer Brea saw a backpack in the car containing Ziploc baggies of what appeared to be marijuana. Officers removed Cherisme from the car and arrested him. They then searched him and the car. Officers found oxycodone and marijuana in

[1] Appx. 358.
[2] Appx. 81.

Cherisme's pocket, a loaded gun under the backpack, marijuana and drug paraphernalia in the backpack, and more marijuana in the trunk.

Cherisme was charged with (1) possession of a firearm by a convicted felon; (2) possession with intent to distribute a controlled substance, oxycodone; and (3) possession with intent to distribute a controlled substance, marijuana. He filed a motion to suppress the evidence seized during his arrest. The District Court denied it. He proceeded to trial, and the jury found him guilty on all counts.

Cherisme appealed.

## II.[3]

For the appeal of the motion to suppress, we review the District Court's factual findings for clear error and its legal determinations de novo.[4] Cherisme argues that the District Court erred in denying his motion because the officers did not have reasonable suspicion to stop his car. We disagree.

Police officers may initiate a traffic stop when they "possess[] specific, articulable facts that an individual was violating a traffic law at the time of the stop."[5] Here, officers stopped Cherisme's car because of the darkly tinted windows. The tinted windows violated a New Jersey law. Indeed, the officers ticketed Cherisme for this violation.

Cherisme argues the traffic stop violated the Fourth Amendment because it was based on an unverified tip. But the record contradicts that assertion. Officers Brea and

---

[3] We have jurisdiction under 28 U.S.C. § 1291.
[4] *United States v. Goldstein*, 914 F.3d 200, 203 n.15 (3d Cir. 2019) (citation omitted).
[5] *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006).

Brock testified at trial that they stopped the car because of the window tint. Cherisme does not offer any evidence to rebut this testimony. Further, a "technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime."[6] For this reason, the stop did not violate the Fourth Amendment.

## III.

Cherisme also contends that there was not sufficient evidence to support his convictions. Our review of a jury's verdict is highly deferential. "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7]

We conclude there was sufficient evidence to convict Cherisme. The evidence that the government presented against him at trial was substantial. Among other things, Officers Brea and Brock testified that they recovered drugs from Cherisme's pocket and a gun and more drugs from the car he was driving. This was more than enough evidence, viewed in the light most favorable to the government, for a jury to convict him of possessing the firearm and the drugs.

Cherisme argues that there was insufficient evidence because the government did not offer forensic evidence tying him to the gun and drugs. But as the District Court

---

[6] *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806 (1996)).

[7] *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25 (3d Cir. 2013) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)).

correctly instructed the jury, the government is not required to present any specific type of evidence at trial.

IV.

Finally, Cherisme argues that the government violated *Brady v. Maryland*[8] by failing to disclose the current police manual provision on writing incident reports. We review this claim for plain error because Cherisme did not properly raise it below.

Cherisme moved to compel the government to produce the NPD's "manual of standard operating procedures." The government told the court it did not possess the NPD's manuals but that Cherisme could request them from the NPD. At the hearing on the motion to compel, the court stated that it was "aware of nothing which would indicate that standard manuals of procedure for a law enforcement agency constitute either *Giglio* or *Brady* material."[9] Still, the court told Cherisme that "[t]hey are accessible to you by subpoena and you can subpoena them."[10] Cherisme served a subpoena on the NPD, and later moved to compel the NPD to produce additional documents. The NPD produced several documents, including the report-writing manual.

At trial, Cherisme's counsel showed the report-writing manual to Officer Brock. Officer Brock testified that the manual was dated 1976 and that the NPD has an updated manual. But after discovering an updated manual exists, counsel moved to another line of questioning. He did not argue that the nondisclosure violated *Brady*. He did not

---

[8] 373 U.S. 83 (1963).
[9] Appx. 204.
[10] *Id.*

request that the court order the NPD to produce the manual. Nor did he, for example, file a post-trial motion arguing that the nondisclosure violated *Brady*. Because he never raised a *Brady* claim, we review for plain error.[11]

The elements of a *Brady* claim are that evidence was (1) suppressed, (2) favorable to the defense, and (3) material to guilt or punishment.[12] For evidence to be suppressed, the government must have actually or constructively possessed it.[13] Here, the relevant evidence is limited to any revisions to the manual because Cherisme had an earlier version of it. Cherisme argues that he could have used an updated manual to impeach police officers about how they wrote incident reports in this case. According to Cherisme, he could have used the manual to attack the veracity or accuracy of these reports.

Cherisme fails to show he has met any elements of a *Brady* claim. First, the record suggests that the NPD, not the prosecutorial team in this case, possessed any updated manual. Second, Cherisme merely speculates that the updates to the manual would be favorable to him. Finally, he does not show the evidence was material, meaning that there is a "reasonable probability" that had the manual been disclosed, the result of his trial would have been different.[14] Nor does Cherisme explain how an

---

[11] *See* Fed. R. Crim. P. 52(b); *United States v. DeMuro*, 677 F.3d 550, 557 (3d Cir. 2012) ("An error that was not objected to at trial is reviewed for plain error.").
[12] *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) (citations omitted).
[13] *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).
[14] *Kyles*, 514 U.S. at 433.

updated manual would meaningfully undercut the substantial evidence against him. For these reasons, we conclude that there was no plain error.

V.

We will affirm Cherisme's judgment of conviction.