**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3113
_____

ROBERT L. MORGAN,
Appellant

v.

BOROUGH OF FANWOOD; BOROUGH OF FANWOOD POLICE DEPARTMENT;
THOMAS JEDIC, Sergeant of the Borough of Fanwood Police Department;
UNION COUNTY SHERIFF'S DEPARTMENT; GLEN TRESCOTT, Union County
Sheriff's Officer; JOHN DOES 1 to X (fictitious named individuals);
ABC I to X (fictitious named entities and/or corporations).
_____

On appeal from the United States District Court
for the District of New Jersey
(No. 2-11-cv-07513)
District Judge: Honorable Esther Salas

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 23, 2017

Before: CHAGARES, RESTREPO, and ROTH, <u>Circuit Judges</u>.

(Filed: March 1, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

Appellant Robert Morgan filed this lawsuit under 42 U.S.C. § 1983, claiming that police officers violated his constitutional rights by conducting an unlawful investigatory stop of his vehicle and by improperly procuring a search warrant to search the vehicle for controlled substances. The District Court granted summary judgment for the defendants, and we will affirm.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. On the afternoon of January 2, 2010, Sergeant Thomas Jedic of the Borough of Fanwood Police Department pulled over Morgan's vehicle, a Jeep Grand Cherokee. Jedic noted prior to the stop that the driver's side tail light cover was partially missing and that the front driver's door was not completely closed. Jedic spoke to Morgan, who was the driver and sole occupant of the car. Morgan explained to Jedic that his vehicle had been stolen but then found, and that it had been in an accident recently. Morgan's vehicle had North Carolina license plates, but he had a Pennsylvania license.

During the stop, Jedic noticed that the carpeting in Morgan's vehicle was covered by carpet freshening powder. There was also an air freshener on the front console. According to his report, Jedic smelled "a strong odor of what my experience and training concluded was raw marijuana." Joint Appendix ("J.A.") 40. Jedic returned to his patrol vehicle and told a back-up officer, "He's got one of those Renuzit air fresheners in there, and I'm getting old, but I smell something." Dashcam Video 15:17:03–15:17:14. Jedic

2

later added, "But like you said it's that, that air, that Renuzit thing is so overpowering." Id. at 15:29:39–15:29:51.[1]

Jedic ran a warrant and license check on Morgan, which revealed an open 2009 warrant for a Robert Morgan with the same Social Security number but a different birthdate. The warrant was issued in Paterson. Morgan stated that his vehicle had been stolen in March 2010 and that he had a previous drug arrest in Newark, but never had a warrant in Paterson.

Jedic issued Morgan a summons for violating Section 39:3-66 of the New Jersey Motor Vehicle and Traffic statute, which provides:

> All lamps, reflectors and other illuminating devices required by this article shall be kept clean and in good working order and, as far as practicable, shall be mounted in such a manner as to reduce the likelihood of their being obscured by mud or dust thrown up by the wheels.

N.J. Stat. Ann. § 39:3-66 Jedic explained to Morgan that he had a responsibility to maintain the cover on the tail light and that the white light emitted without the cover is "blinding." Dashcam Video 15:30:18–15:30:50; 15:31:00–15:31:40. Although Jedic noted the vehicle door problem to Morgan and in his investigative report, he did not ultimately issue a summons for unsafe driving.

After issuing the summons, Jedic told Morgan, "I smell something in that vehicle . . . I smell something a little strong in there," Dashcam Video 15:32:58–15:33:12, and

---

[1] Morgan appears to argue that Jedic "jumped to conclusions" as to the presence of marijuana, but did not object to Jedic's Rule 56 Statement of Undisputed Facts citing Jedic's deposition testimony that he detected what he believed to be the smell of marijuana from Morgan's vehicle.

3

asked if Morgan would consent to a search of the vehicle. Morgan at first agreed, but then withdrew his consent.

Jedic radioed for a K-9 unit from the Union County Sheriff's Department. He stated to the dispatcher, "Listen, I gave this guy a summons, but I smell something in the car . . . See if a county drug dog may be available." Id. at 15:32:58–15:33:12. While waiting for the K-9 unit to arrive, Jedic commented to a back-up officer, "Did you see the amount of carpet freshener?" The other officer replied by agreeing that it was "everywhere." Id. at 15:52:03–18.

Officer Glen Trescott arrived about 20 minutes later with a K-9 named Onyx. Before Onyx was deployed, Jedic told Trescott that he could smell something in the vehicle — namely, "raw marijuana." Id. at 15:52:40–15:53:59. Jedic informed Morgan that the K-9 unit arrived. At this point, Morgan again reversed course and told Jedic that he would consent to a search of his car.

Trescott then brought Onyx around the perimeter of Morgan's vehicle. Although Onyx's movements near the driver's door were partially obscured on the dashcam video, the video does show him lifting his left front paw to the driver's side of the vehicle. Id. at 15:57:39–15:57:42. At this time, two scratch sounds are audible. Id. at 15:57:40–15:57:42. Trescott told Jedic that there was a positive indication for the presence of a controlled substance but that the "odor was not the strongest." Id. at 15:58:16–15:58:21. Jedic then spoke to Morgan again, asking him to verify that he gave the officers permission to search the car. Morgan withdrew his prior authorization and demanded a warrant.

4

Trescott and Jedic applied for a search warrant before the Honorable Robert Mega of the Superior Court of Union County. Jedic testified before Judge Mega that he smelled "an odor of, what I believe to be raw marijuana" and that he believed the carpet powder and air freshener are often used to obscure the smell of marijuana. J.A. 48–49. He added that the smell of the marijuana was a "very sweet pungent odor" and that "[i]t smelled a bit more vegetative to me than it did burnt. And again, it was strong enough to where it in my opinion, overpowered even the air freshener that was in the car." J.A. 49.

Next, Trescott testified that he conducted the dog sniff of Morgan's vehicle by running Onyx around the car, and that the dog showed interest "towards the driver's door." J.A. 50. Trescott then "presented the bottom door seam, driver's door, and the dog gave me a positive indication by scratching." J.A. 50. Trescott testified that through his training and experience, this was an indication of "a smell of narcotics coming from th[e] vehicle." J.A. 51. Jedic then confirmed with the judge that based on his observations and the results of the dog sniff, that there was probable cause to believe that controlled substances were within Morgan's vehicle.

Judge Mega issued a search warrant to search the vehicle. A search — including another dog sniff where Onyx gave a positive indication through repeated scratching — revealed no contraband. Morgan was then released.

Morgan filed suit under 42 U.S.C. § 1983, alleging that his Fourth Amendment rights were violated because Jedic did not have a constitutional basis to stop his vehicle and to issue a citation for violation of N.J. Stat. Ann. § 39:3-66 and because Jedic and Trescott made false statements to Judge Mega in obtaining the search warrant. Morgan,

5

who is African-American, also alleged a violation of his Fourteenth Amendment equal protection rights because the stop was motivated by racial discrimination.

The District Court granted summary judgment to the defendants on the claims relating to the investigatory stop and the warrant on June 30, 2015 and on the discrimination claims on June 14, 2016. Morgan timely appealed.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over summary judgment orders. Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014). Under Federal Rule of Civil Procedure 56, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute exists "only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Thomas, 749 F.3d at 222 (quoting Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). We examine the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Id. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). When, as here, there is reliable video footage of the facts in the record, we view the facts in the light as depicted by the videotape. Id.

6

III.

Morgan appears to raise three issues on appeal: first, whether Jedic initiated an unlawful seizure by detaining him for a summons under N.J. Stat. Ann. § 39:3-66 in violation of the requirement which requires that all vehicle lamps be kept in good working order, and which Morgan argues does not apply to him; second, whether Jedic lacked a constitutional basis for further detaining Morgan because he did not actually smell marijuana in Morgan's car; and third, whether Jedic and Trescott fabricated their testimony regarding the marijuana smell and the K-9 unit's positive indication for controlled substances in Morgan's vehicle when seeking a search warrant from the judge. [2] We will address each in turn.

A.

We first examine whether the initial traffic stop was lawful. It is undisputed that Jedic pulled over Morgan after observing that the vehicle was missing its driver's side rear tail light cover and that the driver's side door was not fully closed. Morgan contends the District Court erred in holding that Jedic did not have reasonable suspicion to initiate the traffic stop because Morgan did not violate the automobile statute that he was ultimately cited under, N.J. Stat. Ann. § 39:3-66. We agree with the District Court.

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.'" United

---

[2] Although Morgan references the "two (2) opinions [the District Court] issued," Morgan Br. 4, he fails to advance any argument as to the Equal Protection claim. Accordingly, he has forfeited that issue. See Free Speech Coal., Inc. v. Attorney Gen., 677 F.3d 519, 545 (3d Cir. 2012).

States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006) (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)).  The legality of routine traffic stops are assessed under the reasonable suspicion standard, where "a police officer . . . [has] the initial burden of providing the 'specific, articulable facts' . . . to believe that an individual has violated the traffic laws."  Id. (quoting United States v. Cortez, 449 U.S. 411, 416 (1981)); see also Terry v. Ohio, 392 U.S. 1, 21–22 (1968).  "Reasonable suspicion . . . can be established with information that is different in quantity or content than that required to establish probable cause," and "reasonable suspicion can arise from information that is less reliable than that required to show probable cause."  United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).  Courts consider the totality of the circumstances, United States v. Lewis, 672 F.3d 232, 237 (3d Cir. 2012), and "whether the facts and circumstances within the officer's knowledge at the time of an investigative stop or arrest objectively justify that action," keeping in mind that the "arresting officer need not have contemplated the specific offense for which the defendant ultimately will be charged," United States v. Laville, 480 F.3d 187, 194 (3d Cir. 2007).

The totality of the circumstances and facts known to Jedic at the time he pulled over Morgan objectively support the investigatory stop.  Morgan's vehicle's tail light was missing its cover and emitted a bright white light.  The driver's side door was not fully closed.  Based on these undisputed facts, there was reasonable suspicion to conduct an investigatory traffic stop of Morgan's vehicle for violations of New Jersey motor vehicle law.  See, e.g., N.J. Stat. Ann. § 39:3-66 (requiring that all lamps on vehicles be "in good

8

working order"); N.J. Stat. Ann. § 39:3-44 (prohibiting the operation of motor vehicles "in such unsafe condition as to endanger or be likely to endanger any person or property").

Morgan's contention that the mere fact the tail light cover was missing is not a violation of section 39:3-66 is unsupported by law or any other authority. The New Jersey statute requires that "lamps, reflectors and illuminating devices" must be kept "in good working order." N.J. Stat. Ann. § 39:3-66. Although the statute does not define "lamp," we agree with the District Court's conclusion that Morgan's restrictive interpretation — that he has not violated the statute as long as the lightbulb itself is working — is unpersuasive. This Court notes that a different statute regulates the color of the light emitted by vehicle lamps and requires that the lamp emit light that is "[s]ubstantially red or amber when the lamp is a turn signal or a stop lamp on or facing the rear; [r]ed when any other lamp or any reflector is on the rear or on either side at or near the rear . . . and [a]mber when any other lamp or reflector is on the front or on either side other than at or near the rear." N.J. Stat. Ann. § 39:3-50. Not only was there reasonable suspicion to believe that Morgan was independently in violation of the lamp-color statute, but this statute also demonstrates that a tail lamp in "good working order" would need to emit red light, not white light directly from the bulb as was the case of Morgan's vehicle.

Moreover, a third independent basis for the stop was that Morgan's vehicle was in an unsafe condition in violation of section 39:3-44 of the New Jersey Motor Vehicle and Traffice laws because the driver's side door was not closed properly. See N.J. Stat. Ann.

9

§ 39:3-44.  Morgan contends that Jedic must show that he initiated the traffic stop "specifically because of the condition of Plaintiff's driver's side door."  Morgan Reply Br. 4.  Yet the question of reasonable suspicion does not turn on the subjective intent of the officer.  United States v. Goodrich, 450 F.3d 552, 559 (3d Cir. 2006); see also Whren v. United States, 517 U.S. 806, 814 (1996).  Thus, we do not ask the question Morgan suggests (Did Jedic initiate the stop solely because of the driver's side door condition?), but rather the question set forth in Terry v. Ohio:  "would the facts available to the officer at the moment of the [stop] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  392 U.S. at 21–22 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).  Based on the record evidence, the answer is yes.

## B.

We next turn to the question of whether the extension of the traffic stop to conduct a dog sniff of Morgan's vehicle violated the Fourth Amendment.[3]  An officer "may conduct certain unrelated checks during an otherwise lawful traffic stop . . . [but] he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."  Rodriguez v. United States, 135 S. Ct. 1609, 1615 (2015).  Under Rodriguez, Jedic prolonged the stop of Morgan in order to conduct a K-9 sniff.  The question before us is whether Jedic had developed "a

---

[3] Morgan appears to challenge the constitutionality of the entire police encounter, but does not clearly distinguish between the different phases of the stop.  We have already addressed the officer's reasonable suspicion for the initial stop based on violations of New Jersey motor vehicle law.  We now address the subsequent extension of the stop to investigate the presence of narcotics in Morgan's car.

reasonable, articulable suspicion of criminal activity" that "expand[ed] the scope of an inquiry beyond the reason for the stop" to justify detaining the vehicle. United States v. Lewis, 672 F.3d 232, 237 (3d Cir. 2012) (quoting United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003)).

While conducting the initial traffic stop, Jedic smelled marijuana and saw and smelled the carpet freshening powder spread throughout the vehicle and air freshener on the console, which prompted him to seek Morgan's permission to search the car. When Morgan declined, Jedic called for a K-9 unit. Moreover, Jedic also learned of an active warrant for an individual with Morgan's first and last name and Social Security number (but different birthdate). These "specific, articulable facts," Delfin-Colina, 464 F.3d at 397, viewed under the totality of the circumstances, established reasonable suspicion for the brief period of delay for the K-9 to arrive and to conduct its sniff of the car.

Morgan contends that because Jedic acknowledged that the smell of the air freshener was "so overpowering" that it is "so hard to say" whether drugs were present, there was no reasonable suspicion to detain him further. Morgan Br. 12. The video and audio recording of Jedic's statements to the back-up officer does not support Morgan's position. Rather, Jedic clearly states that despite the overpowering smell of the carpet and/or air freshener, "I smell something." Dashcam Video 15:17:04–15:17:11; 15:29:39–15:29:50; id. at 15:32:58–33:12 (reiterating, "I smell something in the car . . . See if a county drug dog may be available"). The fact that Jedic acknowledged the additional strong smell of air freshener does not negate his smelling the odor of marijuana.

11

Furthermore, that Jedic was not certain that he smelled marijuana also does not defeat reasonable suspicion, which does not turn on "hard certainties, but with probabilities." United States v. Mathurin, 561 F.3d 170, 174 (3d Cir. 2009) (quoting Cortez, 449 U.S. at 417–18). In Morgan's case, no marijuana was ever found. But as we draw our conclusions based on the reasonableness of the officer's conduct based on the totality of the circumstances at the time, and not as viewed in hindsight, we cannot conclude that the decision to call for a K-9 unit was unreasonable. See Hill v. California, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time.").

Morgan's objection to Jedic's statement "I smell something" as insufficiently specific is without merit. First, there is no requirement that Jedic utter with any level of specificity what he observed and smelled to his fellow officers. Morgan seems to suggest that Jedic's failure to specify the "something" as a specific substance amounts to a triable issue. However, no reasonable jury would conclude that the "something" referred to non-contraband; it would defy common sense for Jedic to state to the dispatcher, "I smell something [that is not contraband]" before requesting a K-9 unit. Dashcam Video 15:32:58–33:12. Second, when Trescott arrived at the scene, Morgan said to him that he smelled "raw marijuana." Id. at 15:53:50–15:55:42.

Finally, to the extent that Morgan disputes that Jedic actually detected what he believed at the time to be the odor of marijuana, he has failed to raise a triable issue. "A

12

party asserting that a fact . . . is genuinely disputed must support" such an assertion with record material. Fed. R. Civ. P. 56(c)(1). Morgan has not done so; in fact, he did not object to Jedic's Statement of Undisputed Facts regarding this issue. In the absence of any record evidence to contradict Jedic's smelling the odor of marijuana — which, combined with his experience and training regarding the use of carpet freshening power throughout a vehicle's flooring and the active warrant containing Morgan's name and Social Security number, form the reasonable suspicion for further detention — Morgan cannot overcome summary judgment.

C.

Morgan finally argues that the District Court erred in dismissing his claim that the search warrant was invalid because Jedic and Trescott submitted false testimony to secure the warrant. To successfully challenge the validity of the warrant, Morgan must satisfy the test set forth in Franks v. Delaware, 438 U.S. 154, 155–56 (1978). The Franks test requires that Morgan prove

> by a preponderance of the evidence, (1) that the affiant knowingly and
> deliberately, or with a reckless disregard for the truth, made false
> statements or omissions that create a falsehood in applying for a warrant;
> and (2) that such statements or omissions are material, or necessary, to the
> finding of probable cause.

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (citing Franks, 438 U.S. at 171–72).

Morgan contends that Trescott committed perjury by stating that the K-9 gave a positive indication for the presence of controlled dangerous substances in the vehicle. However, the dashcam video shows that Trescott was testifying truthfully when he told

13

Judge Mega that "[w]hen I came from the front towards the driver's door, the dog showed some interest. I brought him back, I presented the bottom door seam, driver's door, and the dog gave me a positive indication by scratching." J.A. 50. The video shows Onyx raising his paw to the driver's side front door and the sound of scratching. Although Morgan contests this, we adopt the facts as shown in the incontrovertible video evidence. See Scott, 550 U.S. at 380.

Nor does Morgan present any evidence to controvert Trescott's testimony that Onyx, who is trained in narcotics detection, exhibited behaviors that indicate a positive result for the smell of narcotics. Although Morgan argues that Trescott should have added that the signal from Onyx was "not the strongest," he adduces no evidence showing that this omission was intentional or reckless. Moreover, any such omission would not be material to the finding of probable cause; an indication of the presence of narcotics need not be the strongest signal possible for there to be probable cause, which requires "only the probability, and not a prima facie showing, of criminal activity . . . ." Illinois v. Gates, 462 U.S. 213, 235 (1983) (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).

Morgan also asserts that Jedic falsely testified that he smelled the odor of marijuana from the car. First, this assertion is insufficient to establish a Franks claim because Morgan has not demonstrated that Jedic's testimony was "material" or "necessary" to the finding of probable cause given the evidence of positive dog sniff result. United States v. Pierce, 622 F.3d 209, 213 (3d Cir. 2010) ("[A] dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause

14

necessary to search the car without a warrant."). Second, as we have discussed above, there is nothing in the record to render Jedic's testimony that he smelled marijuana a disputed fact. Morgan's assertion that Jedic was untruthful when he told Judge Mega that he sensed the smell of marijuana was "a bit more vegetative than . . . burnt" and that it "overpowered even the air freshener," Morgan Br. 20, does not establish a genuine issue of material fact because it is unsupported by any record evidence and because it is a self-serving statement by Morgan's attorney. See Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012).

Based on the record, no reasonable jury could find that Trescott or Jedic knowingly, deliberately, or recklessly made false statements or omissions in applying for the warrant, or that any such statement or omission was material to the finding of probable cause. Therefore, we agree with the District Court that Morgan's Franks claims fail.

## IV.

For the reasons stated above, we will affirm the District Court's judgment.

15