**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-1736

———————

UNITED STATES OF AMERICA

v.

CAMEO WITHERSPOON,

Appellant

———————————

Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 2-21-cr-00344-001)
District Judge: Honorable Christy Criswell Wiegand

———————————

Submitted under Third Circuit L.A.R. 34.1(a)
June 7, 2024

Before: HARDIMAN, PORTER, and AMBRO, <u>Circuit Judges</u>

(Opinion filed: June 10, 2024)

———————

OPINION[*]

———————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**AMBRO**, Circuit Judge

Cameo Witherspoon pled guilty to a single count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He now appeals the District Court's denial of his motion to suppress physical evidence seized from his vehicle, which included the firearm he was prohibited from possessing. We affirm the denial of his suppression motion and subsequent conviction.[1]

**I.**

Witherspoon was pulled over in 2021 by Officer Louis Cuccaro of the Monroeville Police Department after Cuccaro determined the registration for Witherspoon's vehicle had expired. Witherspoon stopped and got out of his vehicle. Cuccaro began to speak with him, and he noticed that Witherspoon acted nervously. When Cuccaro asked for his driver's license, Witherspoon replied he did not have it on his person but then said his name was "Aki Johnson"—stating the name slowly and misspelling "Johnson." App. 227-28. Neither Cuccaro nor the Department's police dispatch could find an "Aki Johnson" in the system. Cuccaro then frisked Witherspoon and asked him to retrieve the vehicle's registration and insurance. Witherspoon said he did not know where they were located but called his girlfriend, who owned the vehicle, to find out. The officer overhead Witherspoon's girlfriend tell him that the relevant

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We review the District Court's factual determinations underlying its suppression ruling for clear error and legal conclusions *de novo*. *United States v. Lewis*, 672 F.3d 232, 236-37 (3d Cir. 2012). Because the Court denied the suppression motion, we also view the facts in the light most favorable to the Government. *United States v. Garner*, 961 F.3d 264, 269 (3d Cir. 2020).

information was in the glove box, but Witherspoon lied and told Cuccaro that she did not know where it was. Cuccaro then asked Witherspoon to open the glove compartment. Before opening the passenger door to do so, Witherspoon locked and unlocked the car repeatedly. When he finally opened the car door, Cuccaro smelled marijuana, as he wrote in his incident report and later testified. With the door open, a small black bag was in plain view on the front passenger-side floor. But when Witherspoon opened the glove box, its contents fell onto the floor, obscuring view of the bag. The officer believed this was done on purpose to conceal the bag.

Cuccaro continued to ask Witherspoon how he could demonstrate his identity, but he maintained he had no identification. Cuccaro then suggested Witherspoon call his girlfriend on speakerphone and ask her to say his name. He did so, and she said "Rashad Thomas" was his name. App. 235. Attempting to explain the name discrepancy, Witherspoon claimed that the officer was "blowing his cover" because he had given his girlfriend a false name in case he impregnated her, in which case he did not want her to have his real name. App. 236.

Nonetheless, after it became clear that Witherspoon had provided at least one false name, the officer took Witherspoon's phone, placed him in handcuffs, and put him in the back of the patrol car. He called for a K-9 unit to conduct a drug sniff and informed Witherspoon that, if the drug-sniffing dog alerted, he would seek a search warrant for the vehicle, which would be towed. Witherspoon continued to refuse to provide his real name. The K-9 unit arrived, and the dog alerted to the presence of narcotics in the vehicle.

3

Witherspoon was transported to the stationhouse, where he was finally identified. His vehicle was towed, and after obtaining a search warrant, Cuccaro conducted the search. Inside the black bag, Cuccaro found a firearm. Witherspoon also had multiple prior felony convictions.

In 2021, a grand jury in the Western District of Pennsylvania issued a single-count indictment charging Witherspoon with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He filed several pretrial motions, including a *pro se* motion to suppress the evidence seized from the vehicle, *i.e.*, the firearm. He argued, *inter alia*, that Cuccaro's claim there was an odor of marijuana in his vehicle was not credible and did not support reasonable suspicion to justify calling a K-9 unit for a narcotics sniff.

The District Court conducted an evidentiary hearing. It then denied the motion to suppress. In so doing, it found that Cuccaro's testimony was credible. In response to Witherspoon's argument that the officer unreasonably extended the traffic stop without reasonable suspicion by calling for a K-9 sniff, the Court concluded that he developed reasonable suspicion by the time he called the unit.

Witherspoon then entered a conditional guilty plea in which he preserved his right to appeal the denial of his motion to suppress the evidence seized from the vehicle. He was sentenced to 33 months' imprisonment followed by two years of supervised release. He appeals the denial of his suppression motion.

## II.

Witherspoon raises one issue on appeal: did the District Court err in crediting Cuccaro's testimony that he smelled marijuana when Witherspoon opened the door of his vehicle to obtain the vehicle's registration?  Witherspoon argues that, absent this evidence, Cuccaro lacked reasonable suspicion to request a K-9 sniff of the vehicle; thus, the K-9 request unreasonably prolonged the traffic stop in violation of the Fourth Amendment under *Rodriguez v. United States*, 575 U.S. 348 (2015).

The Fourth Amendment establishes a right to be free from "unreasonable searches and seizures[.]" U.S. Const. amend. IV.  Traffic stops, while they are seizures within the meaning of the Fourth Amendment, *see Whren v. United States*, 517 U.S. 806, 810-11 (1996), are treated as brief, investigatory stops—akin to *Terry* stops—and are lawful when they are based on a reasonable suspicion that a driver has committed a violation of a state's motor vehicle laws, *see Arizona v. Johnson*, 555 U.S. 323, 330–31 (2009); *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006); *see also Rodriguez*, 575 U.S. at 354–55; *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968).  Witherspoon does not contest that the initial stop was justified by reasonable suspicion.

Nonetheless, a traffic stop, even if lawful at its inception, can violate the Fourth Amendment if it is prolonged beyond the time it takes—or should reasonably take—for tasks tied to the traffic violation to be completed.  *Rodriguez*, 575 U.S. at 354 ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."); *see United States v. Clark*, 902 F.3d 404, 409 (3d Cir. 2018) ("Though a stop may be lawful at its inception . . . , it could become

5

'unreasonable,' and thus violate the Constitution's proscription, at some later time."
(citation omitted)). "Beyond determining whether to issue a traffic ticket, an officer's
mission during a traffic stop typically includes checking the driver's license, determining
whether there are outstanding warrants against the driver, and inspecting the automobile's
registration and proof of insurance." *Rodriguez*, 575 U.S. at 349. We refer to the
moment when tasks related to the traffic stop are, or reasonably should have been,
completed as the "*Rodriguez* moment." *United States v. Green*, 897 F.3d 173, 179 (3d
Cir. 2018). Once we fix when that occurred, we then determine whether the facts
available at the time were sufficient to establish reasonable suspicion. *United States v.
Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022).

Reasonable suspicion requires "considerably less than proof of wrongdoing by a
preponderance of the evidence," *United States v. Sokolow*, 490 U.S. 1, 7 (1989), yet more
than a "hunch" is required, *Terry*, 392 U.S. at 27. We examine the totality of the
circumstances to determine if an officer's suspicions meet this standard. *United States v.
Garner*, 961 F.3d 264, 271 (3d Cir. 2020). That is an objective inquiry. *United States v.
Stewart*, 92 F.4th 461, 468 (3d Cir. 2024).

Here, the District Court "err[ed] on the side of caution" and assumed that the
*Rodriguez* moment occurred when Cuccaro called for the K-9 unit, as Witherspoon
argues. App. 352 (quoting *Green*, 897 F.3d at 179). Yet, it concluded that the officer
had reasonable suspicion by that point, noting the following facts were available to him:
Witherspoon left the vehicle quickly after parking and locking the doors; he stated his
girlfriend did not know where the registration was located even though Cuccaro heard her

6

say on speakerphone it was located in the glove compartment; he locked and unlocked the vehicle three times before opening the passenger door; and he dropped the contents of the glove compartment on the black bag containing the firearm. The Court also noted that Cuccaro smelled marijuana when Witherspoon opened the door and that Cuccaro suspected Witherspoon had provided a false name because he slowly misspelled "Aki Johnson" and Witherspoon's girlfriend identified him as "Rashad Thomas."

Even assuming the *Rodriguez* moment occurred when Cuccaro called for a K-9 unit, as the District Court did, we agree he had sufficient grounds, in light of the facts above, to have developed reasonable suspicion to justify delaying the stop for a K-9 narcotics sniff.[2] "[N]ervous, evasive behavior," such as that Witherspoon exhibited, is a factor that contributes to reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). And "the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006).

Witherspoon argues, however, that the District Court clearly erred by accepting Cuccaro's testimony that he smelled an odor of marijuana coming from the vehicle. Witherspoon observes that no physical evidence of marijuana was recovered from the

---

[2] Because we assume the *Rodriguez* moment occurred when Cuccaro called for the K-9 unit, we do not reach the Government's alternative arguments that no *Rodriguez* moment occurred either because (1) Witherspoon was effectively under arrest before the K-9 unit was called or (2) the K-9 unit did not prolong the stop because Cuccaro continued to pursue the mission of the stop even after calling it by trying to ascertain Witherspoon's identity.

vehicle to support that testimony. He also contends Cuccaro made conflicting statements that call his testimony into question.

There is no clear error in the District Court's decision to credit the testimony regarding the marijuana odor. The officer also stated that he found marijuana shake (*i.e.*, small, leftover pieces of the plant matter) inside the vehicle but in amounts insufficient to seize. Corroborating that testimony, the K-9 unit alerted to the presence of narcotics in the car. None of the statements Witherspoon relies on casts doubt on the District Court's credibility determination on clear-error review.

In sum, we agree there was reasonable suspicion justifying any extension of the traffic stop for the K-9 search.[3] We thus affirm the denial of Witherspoon's suppression motion and his subsequent conviction.

---

[3] Witherspoon also briefly contends, based on his assertion that Cuccaro's testimony on the marijuana odor was not credible, there was no probable cause supporting the search warrant for his vehicle because the warrant was premised on the "positive K-9 alert that would not have occurred but for [Cuccaro's] 'off mission' K-9 request that unreasonably delayed the traffic stop." Opening Br. at 32. The District Court concluded that, even if the search had been unlawful (*i.e.*, even if the warrant had not been supported by probable cause), the inevitable discovery doctrine would apply such that the evidence seized in the search would not warrant suppression. Because we affirm the credibility finding, the premise of Witherspoon's argument fails: the positive K-9 alert was not tainted by any unreasonable delay because, as discussed, Cuccaro had developed reasonable suspicion by the time he called for the unit.