NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2041
_____

UNITED STATES OF AMERICA

v.

ANDREW R. COLVIN,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 3-20-cr-00002-001)
District Judge: Honorable Stephanie L. Haines
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 17, 2024

Before: HARDIMAN, SMITH and FISHER, *Circuit Judges*.

(Filed: June 17, 2024)
_____

OPINION*
_____

FISHER, *Circuit Judge*.

Andrew Colvin appeals the denial of his motion to suppress following his

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

conviction for possessing with the intent to distribute a quantity of marijuana, cocaine, MDMA, ketamine, THC, and one gram or more of LSD.[1] He was sentenced to nine years' (108 months') imprisonment, to be followed by four years of supervised release. For the reasons set forth below, we will affirm.[2]

## I.

Colvin first contends that the District Court's "wholesale and uncritical crediting" of FBI Special Agent Simpson's testimony constituted clear error, as that testimony was implausible and contradicted by a video recording of the traffic stop.[3] We disagree. The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures."[4] Consistent with that guarantee, an officer may only conduct a "brief, investigatory stop" when the officer has "reasonable, articulable suspicion" that the individual stopped is involved in criminal activity.[5] Reasonable suspicion involves more than an "inchoate and unparticularized suspicion or 'hunch' of

---

[1] The District Court exercised jurisdiction under 18 U.S.C. § 3231 (offenses against the laws of the United States). We exercise appellate jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts).

[2] "In reviewing the denial of a motion to suppress, we exercise plenary review over the District Court's legal conclusions and review factual findings for clear error." *United States v. Hurtt*, 31 F.4th 152, 158 n.45 (3d Cir. 2022). In doing so, "[w]e view the evidence presented in the light most favorable to the District Court's ruling." *United States v. Clark*, 902 F.3d 404, 409 (3d Cir. 2018).

[3] Appellant's Br. 22.

[4] U.S. Const. amend. IV.

[5] *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (quoting *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000)) (applying the *Terry* doctrine to traffic stops); *see generally Terry v. Ohio*, 392 U.S. 1, 27 (1968).

criminal activity," but is a less exacting standard than probable cause or a preponderance of the evidence.[6]

Here, at least one officer's observations of Colvin's driving provided reasonable suspicion. Special Agent Simpson testified that a Johnstown police officer observed Colvin driving a white Nissan Rogue with his windshield wipers activated on account of rain but without his headlights on (a violation of 75 Pa. Cons. Stat. § 4302(a)(3)), without signaling a right turn (a violation of 75 Pa. Cons. Stat. § 3334), and without yielding to a pedestrian in a crosswalk (a violation of 75 Pa. Cons. Stat. § 3542). We have been clear: "any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime."[7] And so the District Court rightly concluded that reasonable suspicion supported the officer's decision to stop Colvin's car and that no constitutional violation occurred.

Simpson was not present at the scene of the traffic stop, so he lacked firsthand knowledge of how Colvin was driving. And that fact could be relevant if the video left us firmly convinced that the facts found by the District Court were incorrect.[8] But the

---

[6] *United States v. Amos*, 88 F.4th 446, 451 (3d Cir. 2023) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

[7] *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806 (1996)).

[8] *See Rush v. City of Philadelphia*, 78 F.4th 610, 616 (3d Cir. 2023) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (reasoning that appellate courts may conduct a factual review where the record "blatantly contradict[s]" a district court's factual finding).

evidence backs up Simpson's testimony, and certainly does nothing to contradict it.[9] "We view the evidence presented in the light most favorable to the District Court's ruling,"[10] and this record gives us no reason to doubt the District Court's credibility determination.

In short: absent clear error, we will not substitute our judgment about a witness's credibility for that of a trial judge.[11] The District Court did not err, clearly or otherwise, in crediting Simpson's testimony or concluding that the stop was legal at its inception.

## II.

Colvin also argues the stop was unconstitutional in its duration.[12] By now, it is a constitutional truism that an otherwise lawful traffic stop can become unlawful if it is "prolonged beyond the time reasonably required to complete [the] mission" of the stop.[13]

---

[9] For example, Colvin dwells on the fact that the video does not appear to show moving windshield wipers. Appellant's Br. 29. But the video only shows Colvin's wipers for around one second as his car passes by the police car. That is too limited a window to conclude that the wipers were switched off. *See* 75 Pa. Cons. Stat. § 4302(a)(3) (requiring that headlights be illuminated when a vehicle's windshield wipers are "in continuous *or intermittent* use") (emphasis added). The same is true of his argument that "[t]he objective dash camera video evidence establishes the pedestrian was jay-walking and not crossing the street within the marked crosswalk." Appellant's Br. 23. Not so; what the video actually shows is a pedestrian taking a step into the street, within a crosswalk, and stopping immediately as Colvin made a right turn into the same crosswalk. Far from contradicting it, the video corroborates Simpson's testimony.

[10] *Clark*, 902 F.3d at 409.

[11] *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985) (reasoning that credibility determinations made by district courts deserve deference).

[12] A determination of reasonable suspicion is generally reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). So too with determinations about whether a traffic stop was unlawfully extended. *Hurtt*, 31 F.4th at 158 n.45.

[13] *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

4

So an officer may not complete unrelated investigations during a stop once "tasks tied to the traffic infraction are—or reasonably should have been—completed."[14] We call that point in time the "*Rodriguez* moment," and nothing that occurs afterward can support reasonable suspicion.[15]

Locating the *Rodriguez* moment can be tricky,[16] but here we need not locate it at all. From the moment officers approached Colvin's car and detected the odor of marijuana, they possessed at least reasonable suspicion to prolong the stop and investigate non-traffic-related crimes.[17] Indeed, the smell of marijuana "establish[es] not merely reasonable suspicion, but probable cause."[18] This is not even to mention the details—provided by a confidential informant—that the officers confirmed about Colvin, his vehicle, and his trip.[19] Because officers obtained reasonable suspicion to extend the stop as soon as it began, the length of the stop provides no grounds upon which to exclude any evidence.

---

[14] *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

[15] *United States v. Green*, 897 F.3d 173, 181–82 (3d Cir. 2018).

[16] *Id.* at 181.

[17] *Id.* at 186–87 (relying on odor of marijuana to justify extending traffic stop).

[18] *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006).

[19] This included his name, the make and model of the rental vehicle, the existence of a pallet-sized box in the rear of the car, the presence of a passenger, and the presence of drugs. All of this "would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (internal quotation marks, citation, and alteration omitted).

III.

Colvin argues the searches of his rental vehicle, residence, storage unit, and cell phone—conducted pursuant to three warrants[20]—violated the Fourth Amendment because they were the fruit of his unconstitutional traffic stop. It is true that "[i]f a *Terry* stop is conducted without reasonable suspicion of criminal activity, any evidence obtained must be suppressed as 'fruit of the poisonous tree,'"[21] but we have already concluded that Colvin's initial stop was supported by reasonable suspicion.

Colvin also makes a second suppression argument based on a "different poisonous tree": the warrantless on-scene search of his vehicle, information from which was included in the affidavits supporting the warrants to more thoroughly search the car, in addition to searching his storage unit and cell phone.[22] But, as already established, the odor of marijuana provides probable cause to search a vehicle.[23] With probable cause for each search, including the limited on-scene search of Colvin's vehicle, there is no poisonous tree—and, hence, no fruit the District Court should have suppressed.

---

[20] *See* App. 110–38. Colvin references "four search warrants," Appellant's Br. 39, possibly because he assumed that a warrant was obtained for his residence. None was.

[21] *Amos*, 88 F.4th at 451 (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)).

[22] Appellant's Br. 40.

[23] *Ramos*, 443 F.3d at 308; *see also Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (police may search entire vehicle without a warrant if probable cause exists to believe it contains contraband).

6

IV.

Finally, Colvin argues the District Court erred in not suppressing his post-arrest but pre-*Miranda* statements because he made no incriminating statements during that time. The Government's primary counterargument is that "Colvin's statements were not actually *used* by law enforcement in this case to incriminate him," and that "[t]hey played no role in obtaining [the] search warrants."[24]

But we take the record as it is, not as the Government wishes it to be. And here, the affidavit said: "Officer Scribe then spoke with Colvin who advised that he did coke 3 days prior and has been taking oxycodone, and other non[-]prescribed pain medication."[25] The Government asserts that his statement "was made before he was handcuffed or arrested and therefore was in a noncustodial context."[26] But just a cursory review of the dashboard camera video shows this is false; Colvin had been under arrest and handcuffed for nearly ten minutes when he said he used oxycodone for neck pain and had used "cocaine a few days ago." It follows that—handcuffed, arrested, and responding to questions—Colvin was providing information to police during a custodial interrogation, not in a "noncustodial context."[27] It is true that mistakes of fact happen

---

[24] Appellee's Br. 37.
[25] App. 112.
[26] Appellee's Br. 37 n.8.
[27] *Id.*; *Berkemer v. McCarty*, 468 U.S. 420, 434 (1984) (reasoning that *Miranda* applies "at least as of the moment [the suspect is] formally placed under arrest" in a traffic stop).

during litigation, even mistakes of important facts. But federal prosecutors have a special and solemn duty to seek not only convictions, but justice.[28] In misstating the record here, the Government nearly falls short of that end.

Still, despite the Government's shaky handle on the record, we ultimately recognize that any error with respect to Colvin's pre-*Miranda* statement and its use in the search warrant affidavit was harmless.[29] The affidavit supporting the automobile search warrant runs three pages, and demonstrates ample probable cause for a search of the vehicle.[30] A neutral magistrate may find probable cause when, after considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[31] And while probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts," the totality of the circumstances here satisfies that standard with or without the inclusion of

---

[28] *See Berger v. United States*, 295 U.S. 78, 88 (1935).

[29] *See Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (holding that admission of an involuntary statement is subject to harmless-error review); *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (establishing presumption of involuntariness for non-Mirandized statements).

[30] Those facts include the smell of burnt marijuana, Colvin's bloodshot eyes, Colvin's "erratic[]" behavior, two THC pens in plain view, and a large amount of currency and what looked like cocaine in Colvin's wallet.

[31] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Colvin's pre-*Miranda* admission.[32] *Id.* at 232.

For these reasons, we will affirm.

---

[32] *See United States v. Christine*, 687 F.2d 749, 754 (3d Cir. 1982) (reasoning that, when an affidavit has been tainted unconstitutionally, our precedent allows us to redact that taint from the warrant, "striking from [it] those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment").